UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DENISE C.[1], | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00770-RLY-KMB |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION ON COMPLAINT FOR JUDICIAL REVIEW**

Plaintiff Denise C. applied for disability insurance benefits on October 28, 2019, and supplemental security income on December 20, 2019, from the Social Security Administration ("SSA"), alleging an onset date of December 20, 2018. [Dkt. 8-3 at 2, 13.] Her applications were initially denied on March 9, 2020, [*id.* at 11-12, 22-23], and on reconsideration on August 12, 2020, [*id.* at 40, 56]. Administrative Law Jude Kevin Walker (the "ALJ") conducted a hearing on June 24, 2021. [Dkt. 8-2 at 35.] The ALJ issued a decision on August 19, 2021, concluding that Denise was not entitled to receive disability insurance benefits or supplemental security income. [*Id.* at 28.] The Appeals Council denied Denise's request for review on February 22, 2022. [*Id.* at 2.] On April 19, 2022, Denise timely filed this action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Dkt. 1.] This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to the appropriate disposition of the pending motion.

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).[2] The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning disability insurance benefits and SSI, which are identical in most respects. Cases may reference the section pertaining to disability insurance benefits, such as *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000), which cites 20 C.F.R. § 404.1520. Generally, a verbatim section exists establishing the same legal point with both types of benefits. The Court will take care to detail any substantive differences that are applicable to the case.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. RELEVANT BACKGROUND

Denise was 43 years old at the time she applied for disability insurance benefits and supplemental security income. [Dkt. 8-5 at 2, 9.] Denise has a high school education, [dkt. 8-8 at 20], and she previously worked as a customer service representative, [dkt. 8-2 at 26].[3]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and 20 C.F.R. § 416.920(a)(4) and concluded that Denise was not disabled. [*Id.* at 28.] Specifically, the ALJ found as follows:

- At Step One, Denise had not engaged in substantial gainful activity[4] since December 20, 2018, the alleged onset date. [*Id.* at 18.]

- At Step Two, Denise had the following severe impairments: degenerative disc disease, lumbago, anxiety, PTSD, obesity, undifferentiated mixed connective tissue disorder, and osteoarthritis of the bilateral knees. [*Id.*]

- At Step Three, Denise did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [*Id.* at 19.]

- After Step Three but before Step Four, Denise had the RFC "to perform light work as defined in 20 CFR 404.1567(a) and 416.967(a) through February 1, 2020 and sedentary work thereafter except the claimant can occasionally climb ramps, stairs, ladders, ropes

---

[3] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

4

- and scaffolds. She can frequently balance, stoop, kneel, and occasionally crouch and crawl. [Denise] can have no exposure to unprotected heights or hazardous machinery. She can frequently reach, handle, finger and feel with the right upper extremity. [Denise] is able to understand, carry out and remember detailed but not complex tasks. She can related [sic] on a superficial and ongoing basis with coworkers and supervisors. [Denise] can attend to tasks for a sufficient time to complete detailed tasks. She can manage the changes and stress involved in detailed tasks. [Denise] uses a cane to ambulate." [*Id.* at 21.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Denise's RFC, Denise was capable of performing her past relevant work as a customer service representative. [*Id.* at 26.]

- Proceeding to Step Five,[5] relying on VE testimony and considering Denise's age, education, and RFC, there were jobs that existed in significant numbers in the national economy that Denise could have performed through the date of the decision, such as document preparer, final assembler, and inspector. [*Id.* at 27.]

### III. DISCUSSION

Denise makes two assertions of error regarding the ALJ's decision: (1) The ALJ provided inadequate reasoning to discredit her statements regarding pain and limitations, and (2) remand is necessary for a more thorough explanation of the RFC. The Court will consider each of Denise's assertions in turn.

### A. The ALJ's application of SSR 16-3p in assessing Denise's symptoms

Denise makes five separate assertions regarding the ALJ's allegedly deficient subjective symptoms analysis. First, Denise claims that the ALJ mischaracterized the evidence by finding that her "successful surgery and continued activity, and adequate pain control with medications and medical improvement with therapy supports the [RFC]." [Dkt. 10 at 12.] Second, Denise claims that the ALJ cited "minimal findings" regarding her knee x-rays to discount her complaints of knee pain, but it was improper for the ALJ to disregard Denise's subjective complaints of pain only because they were not fully consistent with the objective medical evidence. [*Id.* at 15.] Third,

---

[5] The ALJ proceeded to Step Five despite findings at Step Four that would have ended the analysis.

5

Denise argues that the ALJ failed to adequately consider the effects of her obesity on her other severe and non-severe impairments. [*Id.* at 16.] Fourth, Denise claims that the ALJ improperly concluded that Denise's "actively seeking work suggests that [Denise] believed she was not disabled, and could maintain work within the limitations set forth within the RFC." [*Id.* at 16-17.] And fifth, Denise argues that the ALJ's finding that her symptoms and impairments were "stable" does not bear on her degree of function; stability just means that her symptoms were constant, unwavering, and unlikely to change—not that she was capable of full-time employment. [*Id.* at 18.]

In response, the Commissioner argues that the ALJ considered Denise's statements and testimony about her limitations—including her statements about her activity level—her treatment records, and medical opinion evidence of record and reasonably concluded that the record evidence did not document disabling limitations. [*Id.*] The Commissioner contends that the ALJ did not mischaracterize the evidence, did not overlook any lines of evidence supporting Denise's allegations, expressly acknowledged Denise's complaints of persistent pain, and even partially credited her complaints of pain by including greater limitations in the RFC than the state agency physicians assessed. [*Id.* at 9-10.] Moreover, the Commissioner claims that the ALJ did consider the effects of Denise's obesity and even expressly stated that he had limited Denise to sedentary work in part to account for her obesity. [*Id.* at 13-14.] According to the Commissioner, the ALJ reasonably evaluated Denise's statements about her desire to find a job "where she doesn't have as much lifting or to stand as much" and that the ALJ was not holding this statement against her, but rather, was reasonably noting that Denise appeared to be stating specific work conditions she could sustain. [*Id.* at 14.] The Commissioner also contends that the ALJ did not conflate Denise's stable symptoms with her degree of impairment. [*Id.* at 15.]

Denise filed a reply brief, but she did not specifically respond to the Commissioner's arguments regarding whether the ALJ committed reversible error in evaluating her subjective symptoms.

When assessing a claimant's subjective symptoms, an ALJ will complete a two-step process. First, the ALJ will "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *3. Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established," the ALJ will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* The ALJ will not evaluate an individual's symptoms based solely on objective medical evidence unless the objective medical evidence supports a finding that the claimant is in fact disabled. *Id.* at *4-5. The ALJ will consider factors including (but not limited to) the claimant's daily activities and the effectiveness of the claimant's medication or treatment. *Id.* at *7-8. The court must afford the ALJ's determinations special deference, and it will only reverse if the ALJ's determination is patently wrong. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015).

Here, the ALJ appropriately considered Denise's subjective symptoms in finding that she was not disabled. Though Denise argues that the ALJ's reasoning was inadequate in several respects, each of her arguments fails to show that the ALJ's analysis was deficient such that remand is warranted.

### *1. The ALJ did not mischaracterize the evidence.*

First, the ALJ did not mischaracterize the evidence by finding that Denise's "successful surgery and continued activity, and adequate pain control with medications and medical improvement with therapy supports the [RFC]." There is substantial evidence in the record that Denise's pain was controlled through a combination of surgery, medication, and physical therapy, which the ALJ considered in the decision. For example, the ALJ noted Denise's successful L5-S1 microlumbar diskectomy.[6] [Dkts. 8-2 at 22; 8-7 at 37-38.] At her routine follow-up appointment after this surgery, the surgeon noted that Denise was "doing much better than when [he] saw her last and [that Denise] now reports that she really has no right leg pain. She does have some low back pain that is somewhat persistent, but her radiculopathy has resolved." [Dkt. 8-7 at 112.] After noting that Denise was "doing well" and that lingering back pain was likely musculoskeletal in nature, the surgeon referred Denise to physical therapy. [*Id.*] Several physical therapy treatment records show that Denise consistently complained of back pain, but the ALJ also cited records noting benefits from aquatic therapy, "good potential to reach established goals," and that keeping her core tight while walking "really helped with her pain." [Dkt. 8-7 at 343-354.] These records support the ALJ's finding that Denise experienced "minimal improvement from physical therapy." Denise also told her physical therapist that while her pain levels never changed, she could deal with the pain "because she is active and does not want the pain to stop her." [*Id.* at 349.] After 11 total physical therapy visits, Denise was discharged and was noted to be "doing much better now than prior to initiation." [*Id.* at 427.] At an October 2019 neurology appointment, Denise reported

---

[6] Mark Spoonamore, *Microdiscectomy*, USC SPINE CENTER, Jun. 6, 2023, https://www.uscspine.com/treatment-options/back-treatment/microdiscectomy/ "Microdiscectomy, also called Microlumbar Discectomy (MLD), is performed for patients with a painful lumbar herniated disc."

8

that the medication Lyrica had been helpful with her neuropathy and sciatica nerve pain. [*Id.* at 445.] And in August 2020, a nurse practitioner noted that Denise was on "a good prescription regimen" and recommended that she gradually progress her exercise regimen. [Dkt. 8-9 at 165.] Thus, the ALJ's finding that Denise's pain was adequately controlled through a combination of surgery, physical therapy, and medication was reasonable in light of the record evidence.

Denise disagrees and says that it is not clear, given her continued complaints of pain, that these records show "adequate" pain control. But the ALJ did not ignore Denise's pain complaints; he adequately considered her complaints along with the rest of the record evidence. For example, the ALJ expressly noted that Denise "reported ongoing pain radiating from the right buttock down her leg and into the foot," [dkt. 8-2 at 22]; that Denise "cited lack of activity due to back pain," [*id.* at 23]; that Denise reported fluctuating and intermittent knee pain, [*id.*]; and that records showed complaints of fatigue and joint pain, [*id.* at 24]. The ALJ also considered Denise's complaints that her surgery had not helped with her pain but reasonably contrasted such statements against post-operative records suggesting that the procedure had been successful and had provided pain relief. [*Id.*] In fact, the ALJ provided more restrictive limitations because of Denise's increasing pain (i.e., limited her to sedentary work) than the limitations recommended by state agency doctors (who found Denise capable of working at the light exertional level), which further underscores the ALJ's reasoned analysis. [*Id.* (finding that Denise's "*increased pain complaints … considered in combination with her increasing obesity and degenerative disc disease status post-surgery would reasonably limit [her] to the sedentary exertional level*") (emphasis added).] Denise effectively requests that this Court provide greater weight to her complaints of pain, but it is not this Court's role to reweigh evidence that the ALJ considered. *See Jones v. Astrue*, 623 F.3d 1155, 1162 (7th

9

Cir. 2010); *Palmer v. Saul*, 779 F. App'x 394, 400 (7th Cir. 2019).[7] The ALJ sufficiently considered Denise's complaints of continued pain but reasonably concluded that such pain did not render her disabled in light of the entire record.

Nor did the ALJ commit reversible error when considering Denise's use of an assistive device. Denise correctly asserts that the ALJ mistakenly noted Denise was using an unprescribed assistive device to walk, when in fact the record contains a prescription for a rollator walker. [Dkt. 8-9 at 50.] But, as the Commissioner points out, this mistake was due in part to Denise's counsel, who told the ALJ at the hearing that there were no prescriptions in the record for canes or walkers. [Dkt. 8-2 at 76.] Regardless, the ALJ considered Denise's reports of using an assistive device but also reasonably considered Denise's statement that she not using an assistive device "because she does not want it to ruin her posture or how she walks, and she is not willing to use a wheelchair/scooter/walker." [Dkt. 8-13 at 181.] Denise argues that she made this statement because she is in denial about her limitations, does not want to be disabled, and often pushes herself more than she should. But the ALJ's contrary interpretation of this statement—that Denise's refusal to use an assistive device indicated that the use of an assistive device was "indeed elective"—was reasonable, and the ALJ even credited Denise's use of a cane to walk in the RFC. Accordingly, the ALJ did not mischaracterize the evidence in assessing Denise's subjective symptoms.

*2. The ALJ did not rely solely on objective medical evidence in assessing pain complaints.*

Second, Denise incorrectly concludes that the ALJ erred by considering only objective medical evidence when assessing her pain complaints. The ALJ did consider objective medical

---

[7] The Court is also not persuaded that the ALJ erred here by failing to describe what "continued activity" Denise was allegedly engaged in. The ALJ's reference to Denise's continuing activity appears to stem from Denise's own statements that she is "active." [Dkt. 8-7 at 349.]

10

evidence but also considered Denise's statements, treatment notes, and medical opinions in the record. Denise specifically criticizes the ALJ's treatment of her complaints of knee pain, claiming that the ALJ cited only minimal objective evidence to discredit her "complaints of bilateral knee pain with virtually all movement." But the ALJ also considered that Denise's knee pain was intermittent and fluctuating and that using stairs, daily activities, kneeling, squatting, and standing aggravated her knee pain. *See* SSR 16-3p (An ALJ will consider the duration, frequency, and intensity of pain, as well as factors that aggravate symptoms.). The ALJ further considered Denise's statements that she wanted to find a job "where she doesn't have as much lifting or to stand as much," which the ALJ found suggested that Denise was capable of work within the RFC. *See id.* ("Other evidence that [an ALJ] will consider includes statements from the individual."). And as mentioned, the ALJ thoroughly analyzed Denise's various treatments, including surgical intervention, physical therapy, and medications. *See id.* (An ALJ will consider the effectiveness of medication and other treatments a claimant has received for pain relief.). Denise is correct that an ALJ may not disbelieve a claimant's complaints of pain solely because they are not consistent with objective medical findings such as x-rays. But she incorrectly fixates on a single sentence in the ALJ's decision that "minimal findings do not support [her] subjective complaints" instead of reading the ALJ's decision as a whole. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.7 (7th Cir. 2004) (explaining that "it is proper to read the ALJ's decision as a whole"). Here, the ALJ's decision, when read as a whole, demonstrates that the ALJ went beyond the objective medical evidence in assessing Denise's complaints of pain. Thus, the ALJ did not improperly rely solely on minimal objective findings when considering Denise's pain complaints.

*3. The ALJ adequately considered the impact of obesity on other impairments.*

Third, the decision demonstrates that the ALJ did in fact consider Denise's obesity and its effect on other severe and non-severe impairments. The ALJ found Denise's obesity to be a severe impairment. [Dkt. 8-2 at 18.] When considering whether Denise met or equaled any listed impairment at Step Three, the ALJ explained that he had "evaluated the potential impairment from weight and body habitus." [*Id.* at 20.] And when evaluating Denise's RFC, the ALJ again expressly considered her obesity and explained that Denise's "increased pain complaints, with tenderness in [t]he sacroiliac, knee, and right hand swelling, *considered in combination with her increasing obesity* and degenerative disc disease status post-operative surgery would reasonably limit the claimant to the sedentary exertional level." [*Id.* at 24 (emphasis added).] The ALJ also considered that Denise's "overall function decreased with the onset of her connective tissue disease, *increased obesity*, and osteoarthritis." [*Id.* at 26 (emphasis added).] Thus, the ALJ adequately explained his consideration of Denise's obesity and its effect on her other impairments and found that her obesity was a contributing factor for limiting her to sedentary work. Therefore, the ALJ did not err by failing to consider the effect of Denise's obesity on her other impairments.

*4. The ALJ appropriately considered Denise's statements about wanting to find a job.*

Fourth, the ALJ properly considered Denise's statement about her desire to find a job "where she doesn't have as much lifting or to stand as much" and reasonably concluded that this statement suggested that Denise believed she could maintain full-time work within the limitations set forth in the RFC. [*Id.* at 24-26.] Denise cites to *Ghiselli v. Colvin*, which provides that "[t]here is no inherent inconsistency in being both employed and disabled" and that "[p]ersisting in looking for employment even while claiming to suffer from a painful disability might simply indicate a

strong work ethic or overly-optimistic outlook." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016).

Here, the ALJ did not find that Denise's statement and complaints were inherently inconsistent. Rather, the ALJ considered this statement and concluded that it suggested that Denise believed she was not disabled and could maintain work within the limitations in the RFC, not that it was proof positive that she was not disabled. In fact, *Ghiselli* even says that "a claimant's statements in applying for work following a disability claim might be relevant to her credibility." *Id.* Denise expressed a desire to work and provided limitations she believed she could sustain— that she not be required to lift or stand "as much." It was reasonable for the ALJ to consider Denise's statement about her perceived work limitations in assessing her ability to sustain full-time work.

*5. The ALJ did not err by considering Denise's "stable" impairments.*

Fifth, the ALJ did not err by noting that Denise's "symptoms and impairments were stable, as the most recent medical evidence of record indicate[s] medical stability." [*Id.* at 24.] Denise contends that the ALJ never explained why her "stable" condition undermined her credibility and that stability only signifies that a condition remained the same for a period of time; it does not address the intensity or "level" of her condition. But it appears that the ALJ, after reciting relevant medical evidence showing a worsening of symptoms, was merely noting that subsequent records did not show a continued worsening of symptoms. There is nothing in the decision indicating that the ALJ attempted to diminish Denise's complaints of pain merely because they were stable and/or that the ALJ conflated stability with Denise's degree of function. Instead, the ALJ noted the stability of Denise's symptoms merely for the purpose of showing that her symptoms were stable. In fact, the ALJ noted the stability of Denise's symptoms in *crediting* her complaints of continued

13

pain. [*Id.* (finding that "[s]ubsequent records show [Denise] remaining essentially stable, reporting ambulating primarily with cane, and reporting fatigue and joint pain").] There is nothing in the decision indicating that the ALJ improperly considered the stability of Denise's symptoms or that he considered stability in attempting to undermine Denise's credibility.

Accordingly, the Court concludes that Denise has not met her burden to show reversible error in the ALJ's decision on the points she raises in this section. The ALJ's application of SSR 16-3p in assessing Denise subjective symptoms was not erroneous.

### B. Whether the ALJ failed to explain the basis in evidence to support the limitations in the RFC

Denise claims that remand is necessary for a more thorough explanation of the RFC as it relates to the record evidence. [Dkt. 10 at 4.] In particular, Denise asserts that the ALJ did not adequately explain his finding that she was capable of light work through February 1, 2020, and sedentary work thereafter. [*Id.* at 21.] Denise says this date appears to be arbitrary because there is no explanation about what occurred on February 1, 2020, to justify these further limitations and because this date does not appear to correlate to any age category change either. [*Id.*] Denise further argues that the ALJ ignored certain evidence and did not explain how evidence of back and knee abnormalities supported his conclusion that Denise could stand and walk as required by sedentary work. [*Id.* at 22.] With respect to her mental limitations, Denise argues that there is no explanation for the ALJ's decision to limit her to superficial interaction with supervisors and coworkers but not to provide any limitations regarding her interactions with the public. [*Id.* at 24.] Moreover, Denise claims that the ALJ did not adequately confront evidence that she presented tearful and/or in distress at therapy and medical visits and the effect of this evidence on her ability to complete detailed tasks. [*Id.* at 24.]

14

In response, the Commissioner contends that substantial evidence supports the limitations the ALJ assessed and that any purported error was, at worst, harmless. [Dkt. 12 at 15.] The Commissioner claims that many of the limitations assessed by the ALJ stem from the opinions of state agency doctors and psychologists, and the ALJ reasonably articulated his reliance on these state agency consultants' opinions, which he found partially persuasive. [*Id.* at 17.] The Commissioner concedes that the ALJ did not explain why he believed Denise was capable of light work through February 1, 2020, and sedentary work thereafter. [*Id.*] But the Commissioner asserts that this failure was harmless because the ALJ only found that Denise could perform sedentary jobs. [*Id.* at 18-19.] Accordingly, the Commissioner says that the result would have been the same had the ALJ found Denise capable of only sedentary work during the entire period at issue. [*Id.* at 18.] Additionally, the Commissioner claims that the ALJ's decision to include a limitation regarding Denise's ability to interact with coworkers and supervisors but not regarding her ability to interact with the public can be explained because this is precisely what state agency psychologist Dr. Lovko opined, which the ALJ relied on. [*Id.* at 19.] The Commissioner also argues that Denise's allegations of pain and sometimes tearful presentation were considered by state agency doctors and psychologists, and the ALJ also relied on these opinions in reaching his decision. [*Id.* at 19-20.] In all, the Commissioner emphasizes that Denise has not pointed to evidence indicating she requires additional limitations beyond those provided in the RFC. [*Id.* at 20.]

In reply, Denise counters that several medical providers—specifically, Nurse Practitioner Ladd and Advanced Practice Nurse Stoups—assessed limitations on her work functioning. [Dkt. 15 at 1.] While not specifically labeled a treating source opinion, Denise argues that her counselor opined that disability would be more suitable for Denise than a low impact job. [*Id.*] Thus, Denise says it is not clear why the Commissioner alleges that she did not offer any opinion from her

15

doctors that she had disabling impairments. [*Id.* at 2.] Further, Denise argues that that ALJ made many errors, and the Commissioner's attempt to dismiss them as harmless is unjustified. [*Id.* at 2.] These "harmless errors," according to Denise, add up to an overall poorly considered decision and make the reliability of the ALJ's findings questionable. [*Id.*]

"Although the RFC assessment is a function-by-function assessment … the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 9327 F. App'x. 652, 657 (7th Cir. 2009) (internal quotations omitted). Here, the ALJ satisfied this discussion requirement by analyzing the record evidence, including objective medical evidence, Denise's statements, and Denise's treatments and by providing a narrative that explains the relevant evidence and how it supports the RFC. Ultimately, Denise does not draw the Court's attention to evidence that directly contradicts the ALJ's conclusion or that demonstrates she requires additional limitations beyond those already provided in the RFC. And the ALJ has minimally articulated his reasoning such that the evidence and his conclusions are connected. *See Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (finding that "an ALJ need only minimally articulate his or her justification for rejecting or accepting specific evidence of disability") (internal quotations omitted).

Denise and the Commissioner agree that the ALJ did not fully explain his reasons for finding Denise capable of light work until February 1, 2020, and then sedentary work thereafter. However, the Court is not convinced that Denise has been harmed by this error. The ALJ found that Denise was capable of performing her past work as a customer service representative—a sedentary job. In the alternative, the ALJ also found there were jobs that existed in sufficient numbers in the national economy that Denise could perform, and he specifically identified three

16

representative occupations that are performed at the sedentary level. [Dkt. 8-2 at 26-27.] Regardless of the ALJ not adequately explaining the significance of February 1, 2020, the result would remain the same because the ALJ only found Denise capable of working sedentary jobs. *See Butler v. Kijakazi*, F.4th 498, 504 (7th Cir. 2021) (A court "will not remand a case to the ALJ for further specification where [it is] convinced that the ALJ will reach the same result.") (internal quotations omitted).[8]

The ALJ's assessment of Denise's mental limitations also does not warrant remand. Denise argues that the ALJ did not adequately explain why he concluded that Denise "can relate[] on a superficial and ongoing basis with coworkers and supervisors" but did not include a limitation on Denise's ability to interact with the public. But this limitation is precisely what state agency psychological consultant Dr. Ann Lovko provided in her Mental Residual Functional Capacity Assessment, which the ALJ relied on. [Dkt. 8-3 at 54 ("The Claimant can relate on a superficial and ongoing basis with co-workers and supervisors.").] Dr. Lovko did not include a limitation on interacting with the public. Similarly, the ALJ found that Denise "can attend to tasks for a sufficient time to complete detailed tasks [and] … can manage the changes and stress involved in detailed tasks," but Denise claims the ALJ failed to explain how medical records showing that she presented as tearful and/or in distress at therapy sessions do not impact her ability to complete detailed work." But the ALJ did specifically note evidence that Denise occasionally presented as "sad and tearful but fully oriented, well-groomed, and cooperative." [Dkt. 8-2 at 23.] And Dr. Lovko also considered Denise's claims of tearful presentation at appointments, [dkt. 8-3 at 50],

---

[8] Despite the ALJ not adequately explaining the significance of February 1, 2020, the ALJ did adequately explain that Denise's "increased pain complaints, with tenderness in [t]he sacroiliac, knee, and right hand swelling, considered in combination with her increasing obesity and degenerative disc disease post surgery" called for limiting Denise to the sedentary exertional level. [Dkt. 8-2 at 24.]

17

and nevertheless concluded that Denise "can attend to tasks for a sufficient period to complete tasks [and] … can manage the stresses involved with detailed work-related tasks," [*id.* at 54]. The ALJ cited to the records containing Dr. Lovko's opinion and clearly articulated that the "State agency mental opinions are persuasive and supported by the record." [Dkt. 8-2 at 26.] Thus, the Court can trace the ALJ's reasoning for including these mental limitations in the RFC. Besides, Denise has not pointed to any record evidence indicating that she requires additional limitations with respect to public interaction or because of her occasional tearful and distressed presentation.

Finally, the ALJ sufficiently considered the record evidence as it relates to Denise's ability to stand and walk as required by sedentary work. The ALJ thoroughly considered evidence of Denise's back impairments, including the objective medical evidence and Denise's statements about her perceived level of functioning. The ALJ expressly acknowledged that imaging of Denise's lumbar spine supported her "reports of chronic low back pain with sciatica despite physical therapy and home exercises." [Dkt. 8-2 at 22.] But the ALJ also reasonably considered evidence that tended to indicate that Denise was not disabled, including that she experienced radiculopathy relief after surgery and was "doing much better" after several physical therapy sessions, as well as Denise's own statement that she deals with her pain and is active. Nevertheless, the ALJ included limitations in the RFC to "account[] for any residual musculoskeletal pain." [*Id.* at 23.] The ALJ also considered Denise's bilateral knee osteoarthritis and her knee pain, which was intermittent, fluctuating, and aggravated by, among other things, standing and walking. The ALJ explained that he found the opinions of state agency doctors partially persuasive, deviating from these opinions to prescribe *even greater limitations* and explaining that while Denise's condition improved after her lumbar surgery, subsequent records show that her "overall function

18

decreased" and her combination of impairments "are more consistent with function at the sedentary exertional level." [*Id.* at 26.]

Ultimately, Denise does not point to any evidence demonstrating that she could not perform as assessed in the RFC, including that she could not sustain the standing and walking requirements of sedentary work. The individual claiming disability bears the burden of proof at steps one through four of the five-step sequential evaluation set forth by the SSA. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021). "It [is the claimant's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018). In her reply brief, Denise cites a comment from a counselor that Denise was "looking for a low-impact job, [but the counselor] questions if disability would be more fitting." [Dkt. 8-13 at 180.] But a single comment from a counselor merely inquiring about the possibility of Denise seeking disability falls well short of compelling the need for greater restrictions, especially in light of other evidence in the record cited by the ALJ. Denise also claims that NP Ladd and APN Stoups assessed limitations on Denise's work functioning, but she does not cite any specific findings from either NP Ladd or APN Stoups, and the ALJ explained in the decision that NP Ladd "failed to offer objective evidence in support of these opinions, they are vague, they do not define the terms under which the limitations are set forth, and they are limited in duration as the claimant improved greatly in approximately 1 month after surgery … [and] [t]he record lacks other opinions consistent with that of NP Ladd." [Dkt. 8-2 at 25.] Similarly, the ALJ found APN Stoups' opinion not persuasive because it was not supported by the medical evidence in the record. [*Id.*]

Accordingly, the Court concludes that Denise has not met her burden to show reversible error in the ALJ's decision on the points she raises in this section. The ALJ sufficiently explained the evidence supporting the limitations in the RFC.

## IV. CONCLUSION

For the reasons detailed herein, the Magistrate Judge recommends that the District Judge **AFFIRM** the Commissioner's decision finding that Denise was not disabled. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b). The failure to file objections **within 14 days** after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

**SO RECOMMENDED.**

Date: 6/14/2023

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email